UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/23/2020

RODNEY JOSEPH,

                  Plaintiff,

   -against-

ANTHONY ANNUCCI, et. al,

                  Defendants.

18-cv-7197 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff, Rodney Joseph ("Plaintiff"), formerly incarcerated at Sullivan Correctional facility, brings this action under 42 U.S.C. § 1983, asserting claims of deliberate indifference to his medical needs, forcible touching, assault, retaliation, denial of due process, and impeding religious practice. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff sues 44 medical staff members, kitchen staff members, correctional officers, and correctional officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including Anthony Annucci, William Keyser, Edward Burnett, Gail Williams, Angelo Justiniano, Corey Proscia, Joseph Maxwell, Lane Kortright, Swany Reid, Frank Decker, Samuel Encarnacion, Stainislaus Ogbonna, Jefrysson Aldana, Scott Christie, Colleen Bennett, Tanya Pomeroy, Wladyslaw Sidorowicz, Janice Wolf, S.T. Herman, Epifanio Tolentio, Kevin Miller, Wayne Jordan, William Beach, Renee Askew, Michael Wood, Van Fuller, Gina Maliga, Heather Wyatt, William Eleberth, Kellyanne Giminiani, Christopher Conway, Blain Reddish, Mark Puerschner, David Jurgens, Edward Bonnell, Shaun Braisington, Joseph Franke, Matthew DeFrank, Chester Stungis, Robert Depaolo, and Adam Jarosz (the "Represented Defendants").[1] (*Id.*)

---

[1] Defendants Ginger Eggler, "Ginsin," and Alan Hanson have not been served. (*See* ECF Nos. 10, 11, and 15; Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF No. 80 ("Defs.' Mot.") at 8, n.1.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Represented Defendants have moved to dismiss the Complaint. (*See* ECF No. 79.) Plaintiff has not responded to the motion; thus, per a memorandum endorsement dated August 5, 2019, the Court deemed the motion fully submitted. (*See* ECF No. 81.) For the following reasons, the Represented Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Allegations

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

#### a.    Plaintiff's Medical Condition and Treatment

Plaintiff asserts that in or about 2008, after suffering a heart attack, he was placed on diabetic medications by a Sullivan Correctional Facility ("Sullivan") doctor. (Compl. at 18.) Sometime in 2016, however, he was taken off the diabetic medications by the medical staff at Sullivan. (*Id.*) Shortly after being taken off the diabetic medications, Plaintiff began to suffer pain in his arms, difficulty breathing, and an increased heart rate. (*Id.*) He complained to the Medical Department on a sick call visit, but only received 30 days off from work. (*Id.*) Plaintiff asserts that the pain got worse and he kept going to sick call but nothing was done to alleviate his pain. (*Id.*) In or about June 2017, after going to emergency sick call with "unbearable pain," Plaintiff suffered another heart attack and was rushed to a hospital where he underwent quadruple-bypass heart surgery. (*Id.*) Plaintiff asserts the following: the medical staff taking him off the diabetic medications led to his heart attack; he is presently in severe pain but is not receiving all of the

recommended medications prescribed by a specialist; and he is possibly suffering the symptoms of another imminent heart attack or stroke. (*Id.* at 18–19.)

### b. January 11, 2018 Incident

Plaintiff also asserts forcible touching and assault claims against Defendant Correctional Officer Wyatt ("Wyatt") stemming from an incident that occurred on or about January 11, 2018. (*Id.* at 19.) Plaintiff alleges that, on January 10, 2018, he filed a grievance against Wyatt. (*Id.*) He alleges that after he filed the grievance, when he delivered feed-up bags for other inmates, Wyatt ordered him on the wall for a pat frisk although he had previously been pat frisked when he left the kitchen. (*Id.*) Plaintiff claims that while he was on the wall, Wyatt "started squeezing and poking in the areas where [he] had [his] quadruple-by-pass surgery, chest, arms, legs, and private parts." (*Id.* at 20.) Plaintiff alleges that Wyatt's actions caused him chest pains and led to a one-week hospital stay at Albany Medical Center because most of his arteries were blocked. (*Id.*)

### c. Officers' Retaliation

Plaintiff asserts that Wyatt acted in retaliation for Plaintiff's filing of the grievance against her. (*Id.*) Plaintiff also claims that he was subjected to retaliation by other correction officers for the filing of grievances. (*Id.*) He claims the following retaliatory actions: he was issued a fabricated misbehavior report and his job assignment was taken away on or about June 20, 2018, despite an "excellent work evaluation"; DOCCS staff would not allow him to notify his family when he was admitted to an outside hospital, or allow him to call his family; his cell was unreasonably searched five out of seven days; he was denied access to medication; and his religious callout was cancelled without a security reason. (*Id.* at 21–22.)

### d. Incident with Correctional Officer Elberth

Finally, Plaintiff alleges that while conducting a pat frisk, Correctional Officer Elberth ("Elberth") told him to reach back with his left hand and take off his right boot. (*Id.* at 22.) When

Plaintiff told Elberth that he was unable to stretch out like that because of his medical issues, Elberth grabbed his left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall, causing him pain. (*Id.*) Plaintiff claims that Elberth then did the same thing to his right leg, despite Plaintiff informing Elberth that he was in pain. (*Id.*) After the incident, Plaintiff went to emergency medical and had to be rushed to the hospital for a "minor heart attack." (*Id.*) Plaintiff claims that the attack was caused by Elberth's actions, and now every time he sees Elberth, the officer threatens him. (*Id.*) Plaintiff asserts that Elberth also sends unspecified threatening messages to him through other correction officers. (*Id.*)

## LEGAL STANDARD

### I.  Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a

pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki,* 232 F.3d 321, 322 (2d Cir. 2000).

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II.     Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction in a federal court bears the burden of proving that jurisdiction by the preponderance of the evidence. *Id.* The court must take all facts in the complaint as true and draw all inferences in favor of the party asserting jurisdiction. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2000). As with Rule 12(b)(6), when dealing with Rule 12(b)(1), the Court construes the allegations in a *pro se* plaintiff's complaint in the light most favorable to the *pro se* plaintiff. *Makarova*, 201 F.3d at 113.

## III.     42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

### I.    Defendants Who Are Only Named in the Caption

As an initial matter, Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are only named in the caption and the complaint contains no allegations that they violated the law or otherwise caused injury to the Plaintiff.

Plaintiff fails to assert personal involvement on the part of these 40 defendants in this matter. In order to hold a defendant responsible for a constitutional deprivation, Plaintiff must demonstrate, *inter alia*, the defendant's personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989); *Monell v. New York City Dept. of Social*

*Services*, 436 U.S. 658, 692–95 (1978). Supervisory officials may be personally involved within the meaning of § 1983 only if he or she participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). "A Plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Here, Plaintiff fails to allege facts of any personal involvement by the 40 aforementioned defendants. They are named in the caption only. The body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner. For this reason, the claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are dismissed without prejudice for lack of personal involvement.

## II.    Eighth Amendment Medical Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1)

an objectively serious medical need and (2) subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

Defendant does not allege that any Defendant was involved in his medical care or treatment—his Complaint mentions that "DOCCS Staff" took him off the diabetic medications, and that he made complaints to the "Medical Department" at sick call. (*See* Compl. at 18.) While chest pain resulting from clogged arteries and heart attacks surely constitute serious medical conditions, [2] Plaintiff has failed to allege any Defendant's involvement in, let alone any Defendant's deliberate indifference to, Plaintiff's medical care. Therefore, Plaintiff's Eighth Amendment claim is dismissed without prejudice.

It is possible that Plaintiff intended to bring claims against certain named defendants from the caption, whom he has identified as serving in medical roles at Sullivan: Ginger Eggler (Nurse Administrator 1); Colleen Bennett (Nurse Administrator 2); Wladyslaw Sidorowicz (Facility Doctor); and Janice Wolf a/k/a Janice Wolf-Friedman (Facility Doctor). To the extent that Plaintiff

---

[2] "[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard." *Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *5 (S.D.N.Y. Mar. 29, 2016) (quoting *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)); *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" has been found to constitute a sufficiently serious injury).

can provide more factual allegations relating to these four defendants with respect to Plaintiff's alleged medical indifference claim, Plaintiff is granted leave to replead that claim.

### III.     Retaliation Under the First Amendment

Plaintiff's claims against several prison officials regarding alleged retaliatory action sound in the First Amendment.  To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003).  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation . . . Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a[ retaliatory] action taken against them is considered adverse."  *Id.*   In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

> virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act. . . . Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

### a.        January 11, 2018 Incident and Cell Searches

Plaintiff alleges that Defendant Wyatt retaliated against him because he filed a grievance against Wyatt on January 10, 2018, when Plaintiff discussed the grievance with Defendant Sergeant Fuller. (Compl. at 19.) Plaintiff alleges that this retaliation took the form of a pat frisk on January 11, 2018, in which Wyatt "squeez[ed]" and "pok[ed]" his chest, arms, legs, and "private parts." (*Id.* at 20.) Plaintiff further alleges that Area Sergeant Defendant Hanson told him that "if [he] did not sign off on this grievance, [he] was going to have a whole lot of problems." (*Id.* at 20.) Additionally, Plaintiff alleges that his cell was searched in an "unreasonable manner" five out of seven days. (*Id.* at 21.)

On these issues, Plaintiff has failed to state a claim for relief because "cell searches and pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." *Amaker v. Fischer*, No. 10-CV-0977A SR, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, No. 10-CV-0977, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015). This is "because inmates have no reasonable expectation of privacy in their prison cells" and therefore "no constitutional right to be free from

cell searches of any kind, including retaliatory cell searches." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005); *see also Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("Cell searches and pat frisks are an ordinary part of prison life and . . . do not deter the average inmate from continuing to exercise . . . First Amendment rights"). Furthermore, the Complaint does not link the cell searches to any particular defendant. (*See* Compl. at 21.) Accordingly, even if retaliatory in nature, Plaintiff's claims against Defendants Wyatt, Hanson, and any other defendants regarding these incidents must be dismissed with prejudice.[3]

### b. Loss of Job Assignment

Plaintiff further alleges that his job assignment was taken away from him due to a "fabricated misbehavior report" as retaliation for Plaintiff's filing of harassment grievances. (Compl. at 21.) Plaintiff notes that despite his "excellent work evaluation," the proffered basis for his termination was that Plaintiff "do[es] not get along with other inmates and staff." (*Id.*) This claim similarly fails on the pleadings.

Defendants are correct that inmates do not have any constitutional, statutory, or regulatory right to any prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.'"). Furthermore, the thin allegations contained in the complaint are "wholly conclusory with no

---

[3] To the extent that Plaintiff's allegation suggest that Defendant Wyatt used excessive force, these allegations also fail to state a claim upon which relief can be granted. The actions alleged by Plaintiff do not rise to the level of a constitutional violation. *See Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at *7 (S.D.N.Y. Dec. 18, 2003) (rejecting Eighth Amendment claim where defendant's action in pressing plaintiff's face into a wall while conducting a pat frisk was "consistent with a good faith attempt to maintain prison discipline and order" and lacked "malicious" intent).

To the extent that Plaintiff alleges that Defendant Wyatt committed offenses under the New York State Penal Law, this claim must be dismissed because the law does not provide a private right of action to enforce rights allegedly created by this provision. *See Casey Sys., Inc. v. Firecom, Inc.*, No. 94 CIV. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995) ("As a general rule, when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction.").

plausible nexus between the grievance and the misbehavior report." *White v. Bergenstock*, No. 08 Civ. 717, 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009). Plaintiff's Complaint does not contain any allegations as to the nature of the misbehavior report that led to the loss of his job, who wrote the misbehavior report, nor does it connect the writer of that misbehavior report to the grievances in any way. *See Bouknight v. Shaw*, No. 08 CIV 5187(PKC), 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding plaintiff's allegation that officer "wrote [him] up for revenge" was conclusory and insufficient to state a plausible retaliation claim).

Consequently, these claims are dismissed without prejudice. To the extent that Plaintiff can provide more factual allegations relating to the author of the misbehavior report and a connection between Plaintiff's grievance, the misbehavior report, and loss of Plaintiff's job, Plaintiff is granted leave to replead his claim.

## IV. First Amendment Freedom of Speech

Plaintiff additionally asserts that "DOCCS staff" did not allow him to notify his family about his treatment at an outside hospital, and that he was not allowed to call them. (Compl. at 21.) This amounts to a First Amendment freedom of speech claim, which is a cognizable claim under § 1983. *See Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection."). First Amendment rights "may not be infringed without good cause," and "there must be a showing of a substantial governmental interest serving the legitimate and reasonable needs and exigencies of the institutional environment . . . to warrant such limitations upon an individual inmate's rights to communicate." *Id.* (internal citations omitted). But, as courts considering prison telephone restrictions have agreed, "an inmate has no right to unlimited telephone use." *Pitsley v. Ricks*, No. 96-CV-0372NAMDRH, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000) (citing support from First, Sixth, Seventh, Eighth, Fifth, and Ninth Courts of Appeals). The same holds

true with regard to mailing non-legal letters.  *See Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972) ("[A] prisoner's right to mail letters to his family or friends is not absolute.").

In any case, allegations of infringement of rights must have some specificity.  Again, Plaintiff has failed to allege that any Defendant in this action was involved in this denial.  For the reasons outlined above, because a defendant's personal involvement is a necessary element of a 1983 claim, *see McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), this claim must be dismissed without prejudice.

## V.     First Amendment Free Exercise

Plaintiff's next claim pertains to the exercise of his religious beliefs, which he claims were infringed by an "intentional" cancellation of his religious "call-out."  (Compl. at 22.)  Plaintiff alleges that "there is no security reason for this."  (*Id.*)

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).  The Second Circuit has acknowledged, however, that "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted).

To establish a free exercise claim, courts in this Circuit have generally required inmate plaintiffs to plead that the disputed conduct substantially burdened a sincerely held religious belief. *See Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18,

2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). Defendants "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[.]" *Salahuddin*, 467 F.3d at 275.

In the present action, Plaintiff has again failed to allege that any Defendant was involved in the cancellation of his religious call out. Plaintiff does not specify how often or why his callout was canceled. Without more, Plaintiff cannot plausibly allege that his sincerely held religious beliefs were "substantially burdened." *See Williams v. Weaver*, No. 9:03CV0912(LEK/GHL), 2006 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (denial of access to two weekly religious services does not constitute substantial burden); *c.f. George v. Cty. of Westchester*, NY, No. 13 CV 4511 VB, 2014 WL 1508612, at *4 (S.D.N.Y. Apr. 10, 2014) (finding substantial burden plausibly alleged where plaintiff was denied congregate religious services "repeatedly" over two periods totaling approximately ten months). Accordingly, this claim is also dismissed without prejudice.

## VI. Eighth Amendment Excessive Force

Next, Plaintiff's description of the incident with Correctional Officer Elberth may be read to present an Eighth Amendment excessive force claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both "an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or failed to act, with a 'sufficiently culpable state of mind.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The objective prong, requiring the alleged conduct to be "'sufficiently serious' to reach constitutional dimensions," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), is a context-specific standard that focuses on the harm done given "contemporary standards of decency."

*Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).   The Supreme Court has explained that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.   Therefore, "the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] *per se . . .* whether or not significant injury is evident." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).   Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).   "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."   *Lebron v. Mrzyglod*, No. 14-CV-10290(KMK), 2019 WL 3239850, at *14 (S.D.N.Y. July 18, 2019).

### a.      Excessive Force Analysis

Here, during the course of a pat frisk, Plaintiff alleges that Elberth instructed him to reach back with his left hand and take off his right boot.   (Compl. at 22.)   Plaintiff did not comply, and instead told Elberth that "he could not reach back like that because he had a Qua[dru]ple By Pass and was unable to stretch back like that."   (*Id.*)   In response, Elberth grabbed Plaintiff's left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall.   (*Id.*)   Plaintiff further specifies that Elberth retorted, "How does that feel?", to which Plaintiff responded that he was in pain.   (*Id.*)   Elberth then repeated the action using Plaintiff's right leg.   (*Id.*)   Subsequently, Plaintiff suffered a "minor heart attack."   (*Id.*)

Defendants argue that the amount of force described by Plaintiff was commensurate with the need to conduct a pat frisk and does not rise to the level of a constitutional violation.   The Court recognizes that "a pat frisk, involving some physical contact, is a standard procedure inside a prison." *Beckles v. Bennett*, No. 05 CIV. 2000 (JSR), 2008 WL 821827, at *20 (S.D.N.Y. Mar. 26, 2008).   As such, allegations of aggressive pat frisks have generally not been found to be

"sufficiently serious" to present viable excessive force claims. *See Tavares v. City of New York*, No. 08 CIV. 3782 PAE JCF, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011), *report and recommendation adopted*, No. 08 CIV. 3782 PAE, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011) (finding "actions taken consistent with a forceful pat frisk—the most serious contact alleged by the plaintiff—are not sufficiently 'repugnant to the conscience of mankind,' to give rise to an Eighth Amendment claim."); *Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at *6 (S.D.N.Y. Dec. 18, 2003) (pressing inmate's face into the wall while conducting pat frisk was "commensurate with the need to conduct a pat frisk"); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (finding level of force applied in "aggressive pat frisks" does not rise to a constitutional violation); *see also Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (no excessive force found where, while handcuffing plaintiff, officer pulled plaintiff's hands behind his back and pushed him against a bar).

While the level of force alleged here by Plaintiff may not, on its own, rise to the level of a constitutional violation, Plaintiff has alleged extenuating circumstances that distinguish his case from those involving run-of-the-mill pat frisks. Plaintiff alleges that he informed Elberth of his medical condition and heart surgery, which prevented him from moving his body as Elberth had instructed. Plaintiff further alleges that he did suffer physical pain as a result of Elberth's actions— and informed Elberth of this—but that Elberth disregarded Plaintiff's condition and continued to forcefully move Plaintiff's legs. Plaintiff has thus averred sufficient facts to plausibly claim that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6; *see also Santiago v. Westchester Cty.*, No. 13–CV–1886, 2014 WL 2048201, at *5 (S.D.N.Y. May 19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted his arm, [and] picked

him up off the ground while squeezing his throat . . . lead to a plausible inference that the force inflicted was malicious and wanton") .

This conclusion is reached by construing the allegations in the Complaint in a light most favorable to Plaintiff, and bearing in mind Plaintiff's status as a *pro se* litigant. Evidence uncovered during discovery may ultimately prove that the force employed by Defendant Elberth was done in a good faith effort to maintain or restore discipline, but such a determination is best resolved on a motion for summary judgment or at trial. *See Olutosin v. Lee*, No. 14-CV-685 (NSR), 2016 WL 2899275, at *9 (S.D.N.Y. May 16, 2016); *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) ("[T]he fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide.") (collecting cases). As such, Defendants' motion to dismiss is denied as to Plaintiff's excessive force claims against Defendant Elberth.

### b. Qualified Immunity Defense

Defendants argue that Defendant Elberth should be entitled to the defense of qualified immunity. The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) whether the right was defined with "reasonable specificity"; (2) whether the Supreme Court and the applicable circuit court support the existence of the right; and (3) whether under existing law a reasonable defendant would have understood that the conduct was unlawful. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013). "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion

to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity).

It is well-settled that freedom from the use of excessive force is a clearly established constitutional right. *See, e.g., Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007). As discussed above, the Complaint sufficiently alleges a violation of Plaintiff's clearly established constitutional right to be free from excessive force under the Eighth Amendment. Further, "nothing at this stage of the proceedings suggests that [the defendant] reasonably believed his actions to be lawful at the time of the challenged act." *Santiago*, 2014 WL 2048201, at *5. Consequently, the Court does not find the application of qualified immunity to be warranted at this juncture.

## VII. Defendant Fuller

The only other Defendant named in the Complaint, Defendant Fuller, is also not alleged to have been personally involved in any constitutional violation. Plaintiff's only allegation against Defendant Fuller is that Plaintiff and Defendant Fuller engaged in a discussion about Plaintiff's intent to file a grievance against Defendant Wyatt. (Compl. at 19.) These allegations fail to show Defendant Fuller's personal involvement in any constitutional violation, and for the same reasons as previously stated, he is therefore dismissed from this action without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part. The motion is denied as to Plaintiff's excessive force claims against Defendant Elberth. The motion is granted as follows:

The following of Plaintiff's claims are dismissed *with prejudice*:

- Plaintiff's First Amendment retaliation claims against Defendants Wyatt, Hanson, and any other defendants regarding the January 11, 2018 incident and cell searches.

The following of Plaintiff's claims are dismissed *without prejudice*:

- Plaintiff's Eighth Amendment medical indifference claims against Eggler, Bennett, Sidorowicz, and Wolf;

- Plaintiff's First Amendment retaliation claim regarding the loss of his job assignment;

- Plaintiff's First Amendment freedom of speech claim;

- Plaintiff's First Amendment free exercise claim; and

- All remaining claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, and Fuller.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Represented Defendants' Motion to Dismiss at ECF No. 79.

Plaintiff shall have thirty-five days from the date of this Opinion, on or before February 27, 2020, to amend the Complaint as to those claims that are dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint. An Amended Civil Rights

Complaint form is attached to this Opinion. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

If Plaintiff does not file an amended complaint within thirty-five days, and he cannot show good cause to excuse such a failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice, and the Complaint (ECF No. 2) will serve as the operative complaint in this action to which remaining Defendants should respond. The remaining Defendant Elberth is directed to file an answer to the Complaint on or before March 19, 2020. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before April 9, 2020.

The Clerk of the Court is respectfully directed to terminate Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, Fuller, Wyatt, and Hanson. The Clerk of the Court is directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

SO ORDERED.

Dated:    January 23, 2020
          White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

20

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes  ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name       Middle Initial       Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City       State       Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

_____

First Name                    Last Name                         Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                         Zip Code

Defendant 2:

_____

First Name                    Last Name                         Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                         Zip Code

Defendant 3:

_____

First Name                    Last Name                         Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                         Zip Code

Defendant 4:

_____

First Name                    Last Name                         Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                          State                         Zip Code

# V.   STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated _____     Plaintiff's Signature _____

First Name _____   Middle Initial _____   Last Name _____

Prison Address _____

County, City _____   State _____   Zip Code _____

Date on which I am delivering this complaint to prison authorities for mailing: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-----------------------------------------------------------x

                          Plaintiff(s),

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

- against -

                          Defendant(s).       _____ CV _____ (NSR)

-----------------------------------------------------------x

       This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.     All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.     This case [is] [is not] to be tried to a jury.

3.     Joinder of additional parties must be accomplished by _____.

4.     Amended pleadings may be filed until _____.

5.     Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.     First request for production of documents, if any, shall be served no later than

        _____.

7.     Non-expert depositions shall be completed by _____.

    a.     Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.     Depositions shall proceed concurrently.

    c.     Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.     Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge